**Milton JENKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–96–00328–CR.

Court of Appeals of Texas,
San Antonio.

March 26, 1997.

Rehearing Overruled June 18, 1997.

---

Lisa M. Beck, Beck & Beck, San Antonio, for Appellant.

Roderick B. Glass, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before HARDBERGER, C.J., and LOPEZ and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### INTRODUCTION

Milton Jenkins was charged with three counts of aggravated sexual assault. Trial was to the jury, which found him guilty as charged, denied his application for probation, and assessed punishment at twenty years confinement for each count, with the sentences to run concurrently. Milton filed a motion for new trial, which was overruled by operation of law, and timely perfected this appeal. We affirm the judgment of the trial court as to count three, but reverse and render on counts one and two.

### FACTS

On March 31, 1994, Angel Jenkins, an eight-year-old child, told her school counselor that she had been raped by her three brothers since she was five years old. The school counselor immediately called the school nurse and later called the Texas Department of Protective and Regulatory Services (Child Protective Services). Child Protective Services told Angel they would send someone to the house and Angel was sent home. A licensed social worker went to the house the same day and interviewed Angel, Milton, and Angel's mother.

Following these interviews, Child Protective Services contacted the sheriff's department and a deputy was assigned to investigate. The deputy interviewed Angel's mother and step-father. A doctor from the Alamo Children's Advocacy Center examined Angel approximately six months after the initial outcry and found nothing abnormal at that time. The State subsequently charged Milton with three acts of penetration of the sexual organ of a child under the age of fourteen. Milton pleaded not guilty to these charges, and was later tried and convicted. In his appeal to this court, Milton claims in ten points of error that (1) the evidence is legally and factually insufficient to support his conviction; and the trial court erred in (2) refusing to allow his attorney to pursue cross-examination of the school counselor regarding whether she defined the word "rape" for Angel; (3) refusing to allow further cross-examination of the deputy regarding the number and dates of the criminal acts; (4) allowing into evidence statements made by Milton to law enforcement officials in the absence of *Miranda* warnings; (5) allowing hearsay evidence concerning statements Milton made to investigators and the deputy sheriff; (6) allowing evidence concerning extraneous offenses; (7) refusing to instruct the jury that they must find the acts occurred on or after Milton's seventeenth birthday; (8) allowing the State's attorney to comment on Milton's right to a jury trial and right to confronta-

tion; (9) improperly commenting on the punishment assessed by rejecting the jury's initial assessment of punishment without complying with the procedure set out in the code of criminal procedure for communications with the jury; and (10) allowing the State's attorney to urge the jury during the State's opening statement to use their verdict to protect Angel.

## SUFFICIENCY OF EVIDENCE

■ In his first point of error, Milton claims that the evidence was legally and factually insufficient to support his conviction. We review challenges to the sufficiency of the evidence under the following standards. In considering the legal sufficiency of the evidence, we must determine whether, viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State,* 820 S.W.2d 154, 156–57 (Tex.Crim.App.1991); *Little v. State,* 758 S.W.2d 551, 562 (Tex.Crim.App.), *cert. denied,* 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). In reviewing a challenge to the factual sufficiency of the evidence, we consider all of the evidence and determine whether the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Crim.App. 1996).

The jury was instructed in this case to find Milton guilty of three counts of aggravated sexual assault only if they found beyond a reasonable doubt that on or about January 30, June 30, and December 30, 1993, Milton "intentionally or knowingly caused the penetration of the female sexual organ of Angel Jenkins, a child, by placing the male sexual organ of the said Milton Jenkins in the female sexual organ of the said Angel Jenkins, and the said child was younger than fourteen (14) years of age." The jury heard evidence from seven State witnesses and four defense witnesses. The first witness called by the State was Jacqueline Redding Krause, Angel's school counselor. Krause testified that

Angel told her that she had been "raped by her brothers," and that Milton had "showed the other boys how to" rape her. Krause said Angel pointed to her abdomen and indicated that it hurt her inside, which Krause understood to mean that Angel had been penetrated.

The next witness called by the State was Lisa Dean, a licensed social worker for Child Protective Services. Dean testified that the case involving Angel was classified as a "priority one" case, which meant that a caseworker needed to make contact with the child and family within twenty-four hours. Dean said she immediately visited Angel and her family and interviewed Angel, Milton, and Angel's mother. Angel told Dean that all three of her brothers sexually abused her, and that the last time Milton abused her was sometime in 1993 when he came to visit. Milton told Dean he had sexual intercourse with Angel less than ten times, and that the last time was sometime in 1993 when he was home for a visit. Angel's mother told Dean that her three sons admitted to having sexual intercourse with their sister. During the interviews with Angel and her family, Dean said she learned that the three brothers had been sexually abused by their mother's former paramours, and that Milton had sexually abused his younger brothers.

The State's next two witnesses were Charles Skinner, a deputy with the Bexar County Sheriff's Department, and Juan Parra, a doctor at the Alamo Children's Advocacy Center. Skinner testified that in the course of his investigation of allegations of sexual abuse against Angel, he interviewed Angel's mother and step-father and Angel's mother requested that charges be brought because she wanted something to be done. Dr. Parra testified that his examination of Angel six months after the initial outcry revealed nothing abnormal, but that only twenty percent of verified sexual abuse cases show signs of sexual abuse upon examination. The State also called the custodian of records for the Alamo Children's Advocacy Center and introduced the records of Angel's examination.

Angel Jenkins was the next witness called by the State. Angel was ten years old at the

time of her testimony. Angel stated repeatedly that she did not want to get her brother in trouble. She admitted that her mother talked to her about her testimony and told her to help her brother out, but she said she did not listen to her mother. Angel remembered talking with Dean and signing a statement. She testified that one of her brothers, Steven, had gotten on top of her naked, without putting his private part inside of her private part, and that afterwards she had to go to the bathroom to clean herself. She then said Milton had done the same thing to her "maybe twice." She said Milton visited her house during summer vacation and Christmas.

The State's last witness was George Roberts, Angel's step-father. Roberts remembered giving a statement to Deputy Skinner. Roberts testified that Milton told him he sexually abused his sister. Roberts said he reported that fact to Skinner.

The first witness called by the defense during the guilt/innocence phase of the trial was Milton himself. Milton testified that on the dates alleged in the indictment, January 30, June 30, and December 30, 1993, he was living either with his natural father or at a boys' shelter. However, he admitted he occasionally stayed overnight at his mother's house where Angel was living, and that he was in Bexar County in January, June, and December 1993. He admitted he was home for Christmas in 1993. Milton stated that when he stayed at his mother's house, all of the kids slept upstairs and his parents slept downstairs. He also said he and his two brothers were often left at home alone with Angel, but denied ever penetrating Angel's female sexual organ or telling anyone he had done so. He did admit, though, that he sexually abused his brothers in the past and had touched Angel's private parts.

The next two witnesses called by the defense were Samuel Riley, an associate minister at the Faith Temple Church, and Anthony Cloud, a youth care worker at Father Flanagan's Boys Town. Riley and Cloud both testified about Milton's good character.

The last witness at trial was Angel's mother. Angel's mother testified that Milton admitted to her that he had been promiscuous with Angel. She also admitted that she did not believe Angel fabricated the allegations.

Milton challenges the sufficiency of this evidence in three primary respects. He contends that there was no evidence or insufficient evidence to prove that an act of penetration took place, that this act took place on three occasions, and that all three occasions occurred after December 9, 1992 when he turned seventeen and could be held criminally responsible as an adult. With regard to the evidence of penetration, although the evidence was conflicting in that the family denied at trial the statements they made to the various witnesses around the time of the outcry statement, it appears to be sufficient to support the jury's verdict. It is for the jury, as the trier of fact, to assess the credibility of witnesses and the weight to be given their testimony, and to resolve any conflicts in the evidence. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991); *Stapleton v. State*, 852 S.W.2d 632, 634 (Tex. App.—Houston 14th Dist.), *rev'd on other grounds*, 868 S.W.2d 781 (Tex.Crim.App. 1993). The evidence supporting a finding that this penetration took place on three occasions, all after Milton's seventeenth birthday, however, is lacking and is legally insufficient to support Milton's conviction for more than one count of aggravated sexual assault. The evidence produced at trial supports a finding that Milton sexually assaulted Angel on only one occasion in 1993. Dean testified that the most specific information she could gather from Angel and Milton as to the dates of the assaults indicated that the last time was sometime in 1993 when Milton was home. This testimony is evidence that one assault took place in 1993, not that three assaults occurred in 1993. Regarding the total number of assaults, whether before or during 1993, Angel testified that Milton abused her "maybe twice," and Dean testified that Milton told her he had sexual intercourse with Angel "less than ten times." This evidence is also insufficient to support a finding that Milton sexually assaulted Angel three times during 1993. We find that the evidence produced at trial is sufficient only to support the jury's finding on count three that Milton sexually assaulted Angel on or about

December 30, 1993. The evidence placed Milton in Bexar County on December 30, 1993, after his seventeenth birthday, and Milton himself admitted that he went home for Christmas in 1993. Jurors are empowered " 'to draw reasonable inferences from basic facts to ultimate facts.' " *Kapuscinski v. State,* 878 S.W.2d 248, 249 (Tex.App.—San Antonio 1994, pet. ref'd) (quoting *Dumas v. State,* 812 S.W.2d 611, 615 (Tex.App.—Dallas 1991, pet. ref'd)). An inference that Milton stayed overnight at his mother's house and assaulted Angel on December 30, 1993 appears reasonable. We conclude that the evidence is legally insufficient to support a finding that Milton sexually assaulted Angel on January 30 and June 30, 1993, the dates alleged in counts one and two, because there was no evidence that Milton sexually assaulted Angel on more than one occasion in 1993.

■ Milton claims that we should find the evidence insufficient as to all three counts because a large portion of the evidence against him constituted hearsay and should have been excluded. However, much of this evidence was admitted under a hearsay exception or was exempt from the hearsay rule. Further, even assuming some evidence was improperly admitted as hearsay, the jury considered this evidence and a reviewing court should consider all of the evidence whether properly or improperly admitted for the jury's consideration. *Rodriguez v. State,* 819 S.W.2d 871, 873 (Tex.Crim.App.1991).

Viewing the evidence in the light most favorable to the verdict, it appears that a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt as to count three. Moreover, a review of all of the evidence does not indicate that the verdict on count three is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Milton's first point of error as it pertains to count three. However, because there is no evidence that Milton sexually assaulted Angel on January 30 and June 30, 1993, we sustain Milton's first point of error as it pertains to counts one and two, reverse the judgment of the trial court on these counts, and render judgment that Milton be acquitted on counts one and two.

Because our decision with regard to this point of error is dispositive of counts one and two, we consider Milton's remaining points of error to determine only whether the judgment of the trial court should be reversed as to count three.

## OPPORTUNITY TO PURSUE CROSS-EXAMINATION

■ In his second and third points of error, Milton claims that the trial court erred by refusing to allow his attorney to pursue cross-examination of the school counselor to determine whether she defined the word "rape" for Angel and of the deputy to determine the number and dates of the criminal acts. On cross-examination of the school counselor, the following exchange took place:

[Defense attorney]: ... She didn't go into different types of touching right?

[Counselor]: No, not specifically.

[Defense attorney]: Of course, you never saw any of this. At this point you can't really say what type of touching that took place, correct?

[Counselor]: Only according to what she said.

[Defense attorney]: Okay. She was not very specific, she's just a little girl, right?

[Counselor]: Well, she did use the term "rape."

[Defense attorney]: Okay. And when she said she knew what that meant, there was no inquiry what that term actually means, correct?

[Counselor]: Yes. I kept asking her, "Do you know what that means? Do you understand what you're saying?" And she said, "Yes, like the teenagers do. I was raped."

[Defense attorney]: But you—but you never actually defined what rape means, correct?

The prosecutor objected at this point, claiming that the question had been asked and answered. The court sustained the objection, and no further inquiry into the child's understanding of the word "rape" was allowed. Milton claims that Angel's understanding of the word "rape" was central to

the outcome of his case, and that the court's restriction of defense counsel's line of questioning in this regard deprived him of his right to confrontation under the Sixth Amendment. *See* U.S. CONST. amend. VI.

During defense counsel's cross-examination of the deputy sheriff, defense counsel questioned the deputy to determine if his investigation indicated the number of criminal acts that had occurred and the approximate dates of their occurrence:

> [Defense attorney]: And your actual investigation into the place where these events were alleged to have occurred was what? Did you go to the site were [sic] these things were alleged to have occurred?
>
> [Deputy]: No.
>
> [Defense attorney]: So you never—how many occurrences did you manage to tie down on this?
>
> [Deputy]: There was no particular incidence [sic] that was tying down on this, as earlier, because it's difficult with children to tie down an exact date, so—
>
> [Defense attorney]: So you can't say how many different times or dates, correct?

The prosecutor then objected that the question had been asked and answered, and the court sustained the objection. Milton claims that the approximate dates and number of the criminal acts were critical to his defense because he had only recently become eligible to be tried as an adult and because Angel's testimony had established that only two acts of offensive touching had occurred.

■ The State argues that Milton waived his second and third points of error and should not be allowed to complain on appeal of the trial court's rulings on the above objections. We agree. The record reveals that Milton's trial counsel failed to make a bill of exception or offer of proof in both instances in which his cross-examination was limited. Rule 52(b) of the Texas Rules of Appellate Procedure provides that when evidence is excluded by the court, the party offering the evidence should make a bill of exception or offer of proof to preserve error on appeal. TEX.R.APP. P. 52(b). When, as in this case, there is no bill of exception or offer of proof

to show the facts the defendant could have proved through cross-examination of an adverse witness, the issue has not been preserved for appellate review. *See Love v. State*, 861 S.W.2d 899, 900–01 (Tex.Crim.App. 1993). Milton has not preserved error on either of these two points and they are, accordingly, overruled.

## SUPPRESSION OF EVIDENCE

■ Milton claims in his fourth point of error that the trial court erred in allowing into evidence statements made by Milton to law enforcement officials in the absence of *Miranda* warnings. Specifically, he contends that any statements he made to the Child Protective Services investigator when she interrogated him at his mother's home should have been excluded because they were made in the course of a custodial interrogation during which the investigator was acting as a law enforcement official.

The State argues that this point of error has also been waived for failure to preserve error. The record reveals that Milton's trial counsel failed to object to the introduction of Milton's statements to the investigator, Lisa Dean. The record also reflects no pre-trial hearing on the admissibility of any of Milton's statements. Milton's trial counsel filed a motion to suppress "all statements and evidence obtained by the State of Texas when he was illegally detained and/or arrested on the date of the action which has given rise to this prosecution"; however, the motion was never set for hearing and no ruling was obtained. Milton also filed a Motion for Hearing on Voluntariness of any Admission or Confession Whether Written or Oral. However, this motion was also never set for a hearing and no ruling was obtained. To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling he desired and obtain a ruling on the request, objection, or motion. TEX.R.APP. P. 52(a). Because Milton failed to comply with this rule of appellate procedure, he has waived his right to complain regarding the admission of his statements to the investigator. Milton's fourth point of error is overruled.

## HEARSAY

■■ Milton claims in his fifth point of error that the trial court erred in permitting the jury to consider hearsay evidence elicited from the Child Protective Services investigator and the deputy sheriff regarding comments Milton made to his mother and his step-father. Milton complains of the following four statements, three of which were made by Dean, the Child Protective Services investigator, and the last of which was made by the deputy sheriff. Dean first testified regarding her conversation with Angel's mother:

> [Prosecutor]: Did Mrs. Roberts [Angel's mother] say that she had ever discussed any of these allegations with Milton?
>
> [Dean]: Yes, she stated that she had confronted all three boys, Lamont, Steven, and Milton, that they had admitted to her that they had had sexual intercourse with Angel.

Dean later testified regarding her conversation with Angel's step-father:

> [Defense attorney]: As far as it actually goes, we're talking about your contacts with the family on March 31st, what were your observations of Angel at that point as far as whether or not she should be immediately removed from the house?
>
> [Dean]: At that time, no. I had spoken with the step-father. He believed the statement that I had taken from Angel, and he said he would protect the child and make sure she's safe. . . .

Finally, Dean made a general comment regarding the family's admissions:

> [Defense attorney]: Okay. Now, these are all kind of like building puzzles, you have to talk to everybody about all different pieces, because you're not a witness, and try to pull it all together?
>
> [Dean]: No, this wasn't a puzzle to me. I mean, everybody admitted to what had happened.

The deputy sheriff testified as follows:

> [Defense attorney]: And, of course, the mother told you that she was unaware of any of this stuff having taken place, is that correct?

> [Deputy]: No, she said—excuse me—she said the children, that the—her family, they had told her it was going on.

The State claims that Milton waived his right to complain that the preceding testimony constituted hearsay. Once again, the State appears to be correct. Milton's trial counsel objected to the admission of none of these alleged hearsay statements and, in fact, elicited three of them himself. Because Milton's trial counsel failed to make a timely request, objection, or motion regarding the admission of the testimony elicited by the prosecution, and because he invited error by eliciting much of the testimony himself, Milton's fifth point of error was not preserved for appellate review and is overruled. *See* TEX.R.APP. P. 52(a); *Capistran v. State,* 759 S.W.2d 121, 124 (Tex.Crim.App.1982).

## EVIDENCE OF EXTRANEOUS OFFENSE

■ Milton claims in his sixth point of error that his right to a fair trial was prejudiced by the admission of testimony concerning extraneous offenses. The evidence of which Milton complains was elicited from Ms. Dean, the investigator. Ms. Dean testified that she learned during her interviews with the family that Milton had sexually abused his two younger brothers. Milton contends that, by allowing this testimony, the trial court permitted him to be tried for being a criminal, generally, rather than for the offense charged. Milton also asserts that the evidence was not relevant, and that its prejudicial impact far outweighed its probative value.

Texas Rule of Criminal Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show he acted in conformity therewith. TEX.R.CRIM. EVID. 404(b). Such evidence may, however, be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* Texas Rule of Criminal Evidence 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. TEX.R.CRIM.

EVID. 403. However, because nearly all evidence proffered by an adverse party will be prejudicial, only unfair prejudice warrants exclusion of the evidence. *Montgomery v. State,* 810 S.W.2d 372, 378 (Tex.Crim.App. 1990).

■ The State claims that Milton has waived his right to complain about evidence of extraneous offenses because, although Milton's trial counsel objected to questioning on this subject, his objection was not specific enough and was not timely. The exchange of which Milton complains occurred during the direct examination of Dean by the prosecution:

> [Prosecutor]: Did you also learn that Milton Jenkins had sexually abused his two little brothers, Lamont and Steven?
>
> [Dean]: Yeah. In my notes there are some different instances. Once—one described that his penis was touched.
>
> [Prosecutor]: By Milton?
>
> [Dean]: Yes, by Milton. I'd have to read—they're in the notes.
>
> . . . .
>
> [Defense attorney]: I'm going to object to that question as being immaterial and irrelevant in this particular case, Your Honor.
>
> [Prosecutor]: Your Honor, the defense brought it up that there were all kinds of sexual abuse allegations. I'm just having her specify what they were.
>
> [The Court]: Overrule the objection.

The State contends that the objection made by Milton's trial counsel was a relevancy objection, not an extraneous offense objection under Rule 404(b), and that the objection was not made until after the question was answered. The rules of appellate procedure require a specific and contemporaneous objection to preserve a complaint for appellate review. TEX.R.APP. P. 52(a). Even assuming the defense attorney's objection was sufficiently specific in this case, it does not appear to have been timely made. Objections should be made as soon as the ground for objection becomes apparent. *Johnson v. State,* 803 S.W.2d 272, 291 (Tex.Crim.App. 1990), *overruled on other grounds by Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.

1991). Accordingly, if a question clearly calls for an objectionable response, defense counsel should make an objection before the witness responds. *Dinkins v. State,* 894 S.W.2d 330, 355 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995). "If he fails to object until after an objectionable question has been asked and answered, and he can show no legitimate reason to justify the delay, his objection is untimely and error is waived." *Id.* The State's question in the instant case called for an objectionable response, no objection was made until the question had been answered, and Milton has provided this court with no explanation to justify the delay.

Moreover, assuming this evidence should have been excluded and that the error in admitting it was preserved for our review, the error, if any, is likely harmless. *See* TEX.R.APP. P. 81(b)(2). A review of the record indicates that other evidence was received establishing that Angel made an outcry statement that she had been raped by Milton, Milton admitted to two individuals that he had sexual intercourse with Angel, and Milton admitted on the witness stand that he had touched Angel's private parts in the past. Notwithstanding the evidence regarding Milton's sexual abuse of his brothers, it is logical to conclude that a rational jury would have reached the same result. Milton's sixth point of error is overruled.

## JURY INSTRUCTION

■ Milton claims in his seventh point of error that the trial court erred by refusing to instruct the jury that to find Milton guilty, they must find beyond a reasonable doubt that the acts charged occurred on or after Milton's seventeenth birthday. The court's charge instructed the jury that they should find Milton guilty of aggravated sexual assault if they found beyond a reasonable doubt that Milton intentionally or knowingly penetrated Angel's female sexual organ on January 30, June 30, and December 30, 1993, the dates alleged for counts one, two, and three, respectively. The jury was further instructed that "the time of the offense mentioned must be some date anterior to the presentment of the indictment, and not so remote

that the prosecution of the offense is barred by limitation."

During the charge conference, defense counsel requested and tendered an instruction limiting the jury's consideration to conduct that occurred after Milton became an adult and precluding them from considering anything that occurred during Milton's juvenile years even if the offense was committed within the statute of limitations. After some discussion, defense counsel informed the court that his concern was that the jury could base an indecency-by-contact finding on evidence presented regarding Milton's offensive touching of Angel when he was fourteen years old. Indecency with a child by contact was submitted as a lesser-included offense. The trial judge informed defense counsel that the instruction would not be necessary because the charge required the jury to find that each count was committed on or about a specific date, and each date was subsequent to Milton's seventeenth birthday. Moreover, the trial judge explained that defense counsel could tell the jury that Milton was not on trial for anything he did when he was fourteen years old, and could only be convicted if he committed the offenses included in the charge after his seventeenth birthday.

Even assuming the trial court's refusal to include the requested instruction was error, Milton has failed to demonstrate harm. The evidence presented at trial regarding sexual abuse occurring prior to January 30, 1993 dealt with Milton's touching of Angel's private parts, not sexual penetration. The jury, then, could only consider the lesser-included offense of indecency with a child as to any acts prior to January 30, 1993. The jury found Milton guilty of three counts of aggravated sexual assault, which required a finding of penetration, unlike indecency with a child. This court should reverse a judgment unless we determine beyond a reasonable doubt that the error complained of made no contribution to the conviction or punishment. Tex.R.App. P. 81(b)(2). Because Milton was not convicted of the offense defense counsel feared the jury might find Milton committed prior to his seventeenth birthday—indecency with a child—Milton has failed to show that any error in excluding the instruction con-

tributed to his conviction or punishment on the aggravated-sexual-assault charges. Milton's seventh point of error is overruled.

## CLOSING ARGUMENT

█ In his eighth point of error, Milton contends that the State improperly commented in closing argument on his right to a jury trial and right to confrontation. The Court of Criminal Appeals has noted that proper jury argument consists of (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) a response to an opponent's argument; or (4) a plea for law enforcement. *Gomez v. State*, 704 S.W.2d 770, 771 (Tex.Crim.App.1985). The comment of which Milton complains is as follows:

> Now, the defendant in this case thinks he should get a medal because he got up there and told you he didn't do it, and he denied it. Well, that's why we're having a trial. If he admits what he did, we don't have a trial, and we don't put little girls up on the stand to have to testify against their brothers, make them feel bad.

Milton claims that the court of criminal appeals "chastised the State for making a similar argument in *Hughes v. State*, 878 S.W.2d 142, 157–58 (Tex.Crim.App.1992)." In *Hughes*, the prosecutor first argued to the jury that it was not right for defense counsel to bring the child victim into court and put her on trial. *Id.* at 157 n. 8. Following an objection from defense counsel, which the trial judge overruled, the prosecutor, referring to the defendant's attorneys, stated:

> They've done nothing wrong. They're trying to protect their client. It's their job. It doesn't mean it's the right thing to do.

*Id.* Defense counsel then objected and moved for a mistrial. The trial judge sustained the objection and instructed the jury to disregard the last comment, but denied the motion for a mistrial. *Id.* The court of criminal appeals found that the trial court's instruction cured any error. *Id.* at 158.

Milton claims that the instant case can be distinguished from *Hughes* in that the jury in this case was not instructed to disregard the comment and was left with the impression that defense counsel, not the State, was re-

sponsible for subjecting the child victim to trial proceedings. Milton's argument begs the question, however. The jury was not instructed to disregard the comment in the instant case because Milton's trial counsel never objected. Milton claims that his failure to object should not result in waiver because the prosecutor's comment was so prejudicial that an instruction to disregard would not cure the harm. It is true that, in the past, an objection to incurable jury argument was not necessary to preserve error. *Romo v. State*, 631 S.W.2d 504, 505 (Tex. Crim.App.1982), *overruled by Cockrell v. State*, 933 S.W.2d 73 (Tex.Crim.App.1996). However, the court of criminal appeals has since overruled this line of cases and has held that "a defendant's failure to object to a jury argument ... forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996). The court has now explained that "a defendant's 'right' not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it." *Id.* Accordingly, by failing to object to the prosecution's argument in this case, Milton has forfeited his right to complain about the argument on appeal. Milton's eighth point of error is overruled.

## COURT'S COMMUNICATION WITH JURY DURING PUNISHMENT PHASE

■ In Milton's ninth point of error, he contends that the trial court improperly commented on the punishment assessed originally by the jury when the court sent a note to the jury rejecting its initial assessment of punishment. At the conclusion of the punishment phase of the trial, the jury sent a verdict to the court sentencing Milton to ten years for count one, ten years for count two, and five years for count three, with the sentences to run *consecutively*. The Texas Penal Code requires that sentences run *concurrently* when the accused is found guilty of more than one offense committed during the same criminal episode. TEX. PENAL CODE ANN. § 3.03 (Vernon 1989). This section rendered the jury's initial verdict illegal. The trial court responded to the jury's initial verdict by circling the portion of the verdict

providing for the sentences to run consecutively and writing "I cannot accept this" on the verdict form. The court then instructed the jury to continue deliberating. Milton's trial counsel objected that the instruction was an unfair comment on the jury's deliberations and requested the court to accept the verdict and ignore the "to run consecutively" language. Shortly thereafter, the jury issued a new verdict sentencing Milton to twenty years on each count.

Milton claims that the trial court's note to the jury was an improper comment on the verdict and constituted an additional instruction to the jury that failed to comply with the requirements of article 36.27 of the Texas Code of Criminal Procedure. Article 36.27 provides that the court should answer communications from the jury in writing, and, before doing so, should use reasonable diligence to secure the presence of the defendant and his counsel so that the defendant and his counsel may inspect the jury's question and the court's answer and make any necessary objections. TEX.CODE CRIM. PROC. ANN. art. 36.27 (Vernon 1981). The State argues that Milton has waived his right to complain of the court's noncompliance with this article because the objection made by Milton's trial counsel was different from his argument in this appeal. Failure to specify the grounds for objection waives error, if any. TEX.R.APP. P. 52(a); *Bilbrey v. State*, 594 S.W.2d 754, 756 (Tex.Crim.App.1980).

■ Notwithstanding the possibility of waiver for failure to make a specific objection, it does not appear that the trial court committed reversible error in its communications with the jury. A communication between the court and the jury that does not amount to an additional instruction upon the law or some phase of the case, although not in compliance with article 36.27, does not constitute reversible error. *Nacol v. State*, 590 S.W.2d 481, 486 (Tex.Crim.App.1979); *Phillips v. State*, 654 S.W.2d 846, 848–49 (Tex.App.—Dallas 1983, no pet.); *Rodriguez v. State*, 625 S.W.2d 101, 102 (Tex.App.—San Antonio 1981, pet. ref'd). Further, in the absence of harm, a point of error complaining of the trial court's communications with the jury should be overruled. TEX.R.APP. P.

81(b)(2); *McGowan v. State,* 664 S.W.2d 355, 358–59 (Tex.Crim.App.1984). Even assuming the court's communication could be construed as an additional instruction to the jury in this case, Milton has failed to demonstrate that he was harmed by the court's actions. Indeed, Milton ultimately received a lesser sentence than he would have received under the jury's illegal verdict. The jury's initial verdict would have resulted in a total of twenty-five years confinement because the sentences on each count were to run *consecutively.* After receiving the court's communication, the jury returned a verdict that resulted in only twenty years total confinement because the sentences for each count, although greater individually, were to run *concurrently.* We overrule Milton's ninth point of error.

### STATE'S OPENING STATEMENT

In his tenth and final point of error, Milton claims that the State's attorney invited jury misconduct in the State's opening statement by urging the jury to use their verdict, not as a statement of the guilt or innocence of the accused, but as a means of protecting the complainant. Milton contends that the State's comment in this regard was an appeal to the jury's emotions and enabled the State to obtain a conviction without meeting its burden of proof. The comment of which Milton complains is as follows:

> Ladies and Gentlemen, this case is about who is going to protect Angel Jenkins.... [A]t the end of the trial, you'll have the opportunity to do just that, to protect her from on-going abuse that she has been enduring since she was five years old.
>
> . . . .
>
> At the end of this trial, you're going to have the opportunity to make sure that she is safe and that Milton Jenkins won't be able to put his hands on her.

Even assuming the State's comment was improper, Milton has waived his right to complain. Milton's trial counsel made no objection to the State's opening statement, and has failed to preserve his complaint for appellate review. *See* Tex.R.App. P. 52(a). Milton's tenth and final point of error is overruled.

Having found no reversible error in points of error two through ten, we affirm the judgment of the trial court on count three and reverse and render judgment on Milton's first point of error that he be acquitted on counts one and two as charged in the indictment.