Opinion issued April 21, 2005











 





     





In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01268-CR




JOHN FLOYD NICHOLS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from County Criminal Court at Law No. 1
Harris County, Texas
Trial Court Cause No. 1160813




MEMORANDUM OPINION
          John Floyd Nichols, appellant, pleaded not guilty to inference with duties of
a public servant. The jury found him guilty. The trial court assessed punishment at
three-days confinement and a $2,000 fine. In appellant’s four issues, appellant
contends that (1) the evidence is legally insufficient to support his conviction; (2) the
evidence is factually insufficient to support his conviction; (3) the trial court erred by
sustaining the State’s objections, thereby denying appellant his fundamental right to
confrontation under the Sixth and Fourteenth Amendments of the United States
Constitution and under Article I of the Texas Constitution; and (4) the trial court
erred by permitting the State to “lead” a witness while viewing a videotape of the
arrest that the witness had not previously seen. We affirm.
                                                        Background
          On November 23, 2002, Houston Police Officer G.E. Miller was patrolling Post
Oak Road as part of his assignment to the Driving While Intoxicated (“DWI”) Task
Force. As he proceeded northbound on Post Oak, he noticed a Ford Expedition
stopped on the southbound side of Post Oak with the driver’s door open. Appellant
was in the passenger seat and Pamela Bergman was in the driver’s seat. Miller made
a U-turn and as he drove behind Bergman’s vehicle, he saw her door close and the
vehicle drive away. Miller began recording on his patrol car-mounted video camera
and noticed Bergman commit a number of traffic violations, including seeing her
vehicle accelerating and decelerating in an unusual manner, making a wide turn,
crossing a lane divider, nearly striking another vehicle, and driving over a solid white
line onto the shoulder and curb. After Miller activated his emergency lights,
Bergman pulled over and entered a parking lot at Miller’s request. 
          When Miller asked to see Bergman’s driver’s license, Bergman gave him her
State Bar of Texas identification card and explained that she did not have her driver’s
license with her. Bergman apologized to Miller and told him that she had a cast on
her leg and one of her contact lenses had fallen out. Miller smelled a “very distinct
and strong odor” of alcohol on Bergman’s breath and saw that her eyes were glazed,
glassy, and watery. In response to his question about her consumption of alcohol that
evening, Bergman told Miller that she had consumed one glass of wine about four
hours earlier. 
          Miller then administered two field sobriety tests on Bergman. First, he
administered the Horizontal Gaze Nystagmus (“HGN”) test. Before Bergman began,
Miller noticed her poor balance as she exited the vehicle. Bergman demonstrated all
six clues for intoxication on the HGN test.
          Miller next administered the modified alphabet test in which he asked Bergman
to recite the alphabet beginning with the letter “G” and ending with the letter “X.” 
Bergman did not perform well on this test because she started with “H” and ended
with “Z.”
          Miller concluded that Bergman was intoxicated and decided to arrest her for
DWI. Rather than informing Bergman that he was arresting her, Miller told her that
he did not believe she had only one glass of wine and indicated that he would offer
her a breath test. Miller tried to bring Bergman’s hands together behind her back to
place handcuffs on her and place her in custody, but Bergman resisted. Bergman
repeatedly screamed “no” and “help me,” and began struggling, which made it
difficult for Miller to place her in handcuffs. At this point, appellant got out of the
vehicle, ignored Miller’s repeated instructions to stay in the vehicle, and approached
Miller yelling and pointing his finger at him. Appellant claims he was telling Miller
not to “manhandle” Bergman. Appellant grabbed both of Miller’s arms, but Miller
was able to call for back up while trying to hold on to Bergman and keep her between
himself and appellant. 
          Appellant and Miller continued to struggle as Bergman broke free and ran back
to her vehicle. After appellant lost his balance, Miller let him fall to the ground. 
Inside her vehicle, Bergman called 911 on a cellular telephone. Miller instructed her
to stay there. As Miller waited for back up, a car driven by William Whigham, a
retired Harris County deputy sheriff, pulled into the parking lot. Whigham and his
sister Jennie Tompkins, a passenger in Whigham’s vehicle, saw from the freeway
service road what appeared to be appellant fighting with Miller and believed that
Miller might need help. Miller arrested Bergman and transported her to the police
station. Appellant was arrested for interfering with the duties of a public servant. 
          A number of field sobriety tests were performed by Officer P. Lassalle on
Bergman at the station. However, Bergman refused to submit her breath for an
intoxilyzer analysis. Officers then took Bergman to a video room where drivers
suspected of intoxication are videotaped performing field sobriety tests. After
Bergman stated that she believed she “can do anything you ask [her] to do,” she
performed the one-leg-stand test, but failed by exhibiting the maximum number of
clues of intoxication. After ensuring that Bergman felt comfortable standing on both
feet, Lassalle asked her to perform the Rhomberg divided attention (mental/physical)
test. Although she was within the normal range for lapse of time by estimating 30
seconds after 33 seconds, she displayed 1 ½ to 2 inches of circular sway, which was
consistent with intoxication. Bergman performed a “nose touch test,” in which she
made multiple mistakes. Bergman also insisted on taking a walk-and-turn test, in
which she exhibited six out of eight possible intoxication clues in this test. Lassalle
opined that Bergman “had definitely lost the normal use” of her mental and physical
faculties on account of alcohol intoxication.
          Appellant, who pleaded not guilty to inference with the duties of a public
servant, and Bergman, who pleaded not guilty to DWI, were tried together before a
single jury. At trial, both appellant and Bergman testified that Miller did not tell
Bergman he was placing her under arrest, but instead manhandled her, even placing
his hands on her breast. Appellant claims he went to Bergman’s aid because she was
screaming for help. Both appellant and Bergman denied that Bergman was
intoxicated and explained her failure to adequately perform the sobriety tests on her
recent foot surgery and cast on her foot.
Legal Sufficiency of Evidence
          In his third issue, appellant asserts that the evidence was legally insufficient to
support his conviction. Specifically, appellant contends that the State failed to prove
beyond a reasonable doubt that appellant committed the offense of inference with
duties of a public servant because the evidence does not prove the element of criminal
negligence. 
            A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). As the exclusive judges of the
facts, the credibility of the witnesses, and the weight to be given their testimony, the
jurors may believe or disbelieve all or any part of a witness’s testimony. Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).
            A person commits the offense of interference with duties of a public servant
if that person (1) while acting with criminal negligence, (2) interrupts, disrupts, or
otherwise interferes with a peace officer, (3) while the peace officer is performing a
duty or exercising authority imposed or granted by law. Tex. Pen. Code Ann. §
38.15(a)(1) (Vernon 2003). Criminal negligence is defined in the Texas Penal Code
as conduct committed by a personwhen he ought to be aware of a substantial and
unjustifiable risk that the circumstances exist or the result
will occur. The risk must be of such a nature and degree
that the failure to perceive it constitutes a gross deviation
from the standard of care that an ordinary person would
exercise under all the circumstances as viewed from the
actor’s standpoint.
Tex. Pen. Code Ann. § 6.03(d) (Vernon 2003).
            Viewed in the light most favorable to the verdict, the evidence at trial indicates
that Miller, a peace officer, was exercising authority granted by law in attempting to
arrest Bergman for driving while intoxicated. The evidence further indicates that
appellant interrupted, disrupted, or otherwise interfered with Miller’s exercise of this
authority by running towards Miller as Miller attempted to place Bergman in custody,
by shouting at Miller as he ran towards him, and by attempting to pull Bergman away
from Miller’s custody. The evidence also indicates that a fact finder could have
found beyond a reasonable doubt that appellant acted with criminal negligence when
he interfered with and interrupted Miller’s public duties. 
          Viewing the evidence in the light most favorable to the verdict, a rational trier
of fact could have found that appellant committed the offense of interference with
public duties. Accordingly, we hold that the evidence was legally sufficient to
support appellant’s conviction. 
          We overrule appellant’s third issue.
Factual Sufficiency of Evidence
          In his fourth issue, appellant asserts that the evidence was factually insufficient
to support his conviction. We review the factual sufficiency of the evidence by
reviewing all of the evidence neutrally, not in the light most favorable to the
prosecution. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In a factual-sufficiency review, we may not substitute our own judgment for that of the fact
finder. Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). The Court of
Criminal Appeals discussed the factual-sufficiency standard as follows: 
There is only one question to be answered in a factual-sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be insufficient. 
First, when considered by itself, evidence supporting the verdict may be
too weak to support the finding of guilt beyond a reasonable doubt. 
Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict. Weighing all evidence under this balancing
scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so [that] the guilty
verdict should not stand. This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient
to prove the elements of the crime beyond a reasonable doubt. Stated
another way, evidence supporting guilt can “outweigh” the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. 

Zuniga v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004). We must consider
the most important evidence that appellant claims undermines the jury’s verdict. Sims
v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
          Appellant contends the evidence is factually insufficient to prove that appellant
committed the offense of interference with duties of a public servant. Appellant
argues that an ordinary person would not have acted any differently than appellant if
that person believed, like appellant, that Bergman was being “manhandled” by a
peace officer such as Miller. In support of appellant’s argument that his actions were
not a gross deviation from the standard of care that an ordinary citizen would
otherwise exercise, appellant points out that (1) Miller did not know what appellant
was thinking; (2) Miller could not hear what appellant was saying; (3) appellant did
not leave Bergman’s vehicle until he heard her call for help; (4) neither Bergman nor
appellant was told by Miller that he was placing her under arrest or taking her into
custody; and (5) appellant, although he could not see what Miller was doing to
Bergman, saw that she was scared by the horrified look on her face. 
          At trial, Officer Miller testified that after administering two field sobriety tests,
he concluded that Bergman was intoxicated. After Miller told her that he was going
to offer her a breath test, he walked behind her and attempted to bring her hands
together so he could place her in handcuffs. Miller testified that Bergman began
struggling as he brought her hands together and she resisted his attempt to place her
in handcuffs. She began screaming “no,” “help me,” and something else that Miller
could not understand. Miller testified that he did not touch any part of her body
except her arms. Miller claims that it was at this point that appellant ignored his
instruction to “stay in the car,” approached Miller in a “very aggressive” manner
while yelling and pointing his finger at Miller, and grabbed both of Miller’s arms. 
Appellant successfully pulled Bergman away from Miller. 
          Bergman testified that after Miller told her something that she could not
understand, Miller grabbed her arm and turned her around. Bergman testified that
this hurt her arms. Bergman stated that Miller “put his hands all the way around me. 
And, around my ‘breasts’ area. And with some strength.” Since Miller never told her
that she was under arrest, Bergman was scared so she screamed for help. Bergman
testified that this caused appellant to get out of the car and “[h]e just, automatically,
tried to help me.” 
          Appellant also testified at trial. Appellant admitted that he did not know
anything about what was happening between Bergman and Miller or what Miller was
doing to Bergman when she was screaming for help. Appellant claims that he
approached Miller and demanded that Miller stop manhandling Bergman due to the
look that he saw in her eyes and the fact that Miller was “[g]rabbing her.” Appellant
testified that he did not see any risks the failure of which to perceive would constitute
a gross deviation from an ordinary person’s standard of care. In fact, appellant
claimed he had “no other choice” but to do what he did “based on what [he] heard.” 
          There was conflicting evidence on the issue of appellant’s criminal negligence
presented at trial. The determination of what weight to give contradictory testimonial
evidence is within the sole province of the jury, as it turns on an evaluation of
credibility and demeanor. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App.
1997). Thus, the jury was free to believe all or any part of the testimony of the State’s
witnesses, and disbelieve all or any part of the witnesses’ testimony. A court of
appeals must show deference to such a jury finding. See id. at 409. The jury found
Miller’s testimony credible despite the contradictions with appellant and Bergman’s
testimony.
          After examining all of the evidence neutrally, we hold that the proof of guilt
was not so obviously weak as to undermine confidence in the jury’s determination;
nor was the contrary evidence so strong that the beyond-a-reasonable-doubt standard
could not have been met. The evidence was factually sufficient to show that appellant
committed the offense of inference with duties of a public servant.
          Accordingly, we overrule appellant’s fourth issue.
Confrontation Clause
          In his first issue, appellant asserts that the trial court violated his fundamental
right to confrontation under the Sixth and Fourteenth Amendments of the United
States Constitution as well as under Article I, Section 10 of the Texas Constitution. 
Specifically, appellant contends that appellant’s right to fully confront the witnesses
against him was violated when the trial court sustained the State’s multiple objections
of “asked and answered.” 
          Appellant complains that the State’s “asked and answered” objections were
sustained when his attorney attempted to cross-examine Tompkins about (1) how
Bergman pulled at the officer, (2) Tomkins’s discussions with her brother about
“what they saw out there that night,” (3) whether Tomkins said, “That man is fighting
that policeman,” and (4) whether Tomkins saw appellant’s hands up. Appellant also
complains that the State’s “asked and answered” objections were sustained when his
attorney attempted to cross-examine Whigman about (1) whether it was standard
procedure to advise a person when they were being taken into custody why they were
being taken into custody, (2) when Whigman worked as a deputy and his training
concerning physical contact with females, (3) whether Whigman saw the officer put
his foot between appellant’s legs, and (4) his testimony that he saw Bergman
“staggering” halfway down the passenger side of the car.



          Under our rules of evidence, error may not be predicated on a court’s ruling
that excludes evidence unless (1) a substantial right of the party is affected, and (2)
“the substance of the evidence was made known to the court, or was apparent from
the context within which questions were asked.” Tex. R. Evid. 103(a)(2); see
Railsback v. State, 95 S.W.3d 473, 477-78 (Tex. App.—Houston [1st Dist.] 2002, pet.
ref’d). An offer of proof needs to show the facts that a defendant wishes to prove; 
if it does not do so, the issue is not preserved for appellate review. Jenkins v. State,
948 S.W.2d 769, 775 (Tex. App.—San Antonio 1997, pet. ref’d).
          Appellant contends on appeal that “[t]he questions themselves were not at
issue; it was the subject matter of those questions that was limited by the trial court.” 
Appellant did not make any offer of proof to the trial court concerning the evidence
he sought to obtain from the subject matter of those questions that were not answered
because of the trial court’s ruling. Additionally, although appellant asserts that these
areas were important to the strategy of his defense, appellant has not asserted in his
brief that the substance of the excluded evidence is apparent from the context within
which questions were asked. It is not clear what evidence Tompkins or Whigman
were prohibited from giving from the context of the questions posed by appellant’s
counsel that were objected to by the State. See Guidry v. State, 9 S.W.3d 133, 153
(Tex. Crim. App. 2000) (“Absent a showing of what such testimony would have been,
or an offer of a statement concerning what the excluded evidence would show,
nothing is presented for review.”); Railsback, 95 S.W.3d at 477 (appellant did not
preserve issue for appellate review because it was not clear from the record what
testimony expert was prohibited from giving and appellant made no offer of proof). 
          We hold that, by failing to make an offer of proof and by failing to demonstrate
how the substance of the excluded evidence is apparent from the context within
which questions were asked, appellant has failed to preserve this issue for appeal. 
See Tex. R. Evid. 103(a)(2); Garza v. State, 846 S.W.2d 936, 939 (Tex.
App.—Houston [1st Dist.] 1993, pet. ref’d). We further note that appellant never
asserted to the trial court that any of the constitutional rights he complains of in this
appeal were violated by the court’s ruling that sustained the State’s objections. See
Wright v. State, 28 S.W.3d 526, 536 (Tex. Crim. App. 2000) (Wright waived his
Confrontation Clause challenge on appeal because he only objected on hearsay and
Rule of Optional Completeness grounds at trial). Therefore, appellant has not
preserved his constitutional complaints for our review. Accordingly, we overrule
appellant’s first issue.
Leading the Witness
          In his second issue, appellant asserts that his Sixth and Fourteenth Amendment
rights were violated as a result of the trial court allowing the State to “lead” witness
Whigham. Specifically, appellant contends that the State led Whigham through his
testimony when the patrol car videotape was played contemporaneously with his trial
testimony. 
          To preserve an issue for appeal, the appealing party must have made a timely,
specific objection at the earliest possible opportunity and with enough specificity to
inform the trial court of the complaint. Tex. R. App. P. 33.1(a)(1)(A); Broxton v.
State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). At trial, when the State
attempted to play the videotape as Whigham testified, appellant’s trial counsel
objected that the State was “leading the witness” and that the State’s use of the
videotape in that manner was “leading, and suggestive, and outside of the rules of
protocol.” See Tex. R. Evid. 611(c) (stating “Leading questions should not be used
on the direct examination of a witness except as may be necessary to develop the
testimony of the witness.”). Appellant’s attorney never objected to the trial court on
the grounds that he asserts in this appeal concerning appellant’s Sixth and Fourteenth
Amendment rights. Therefore, appellant has not preserved this issue for appellate
review. See Wright, 28 S.W.3d at 536 (Confrontation Clause challenge waived on
appeal because only objections at trial were hearsay and Rule of Optional
Completeness). Accordingly, we overrule appellant’s second issue. 
Conclusion
          We affirm the judgment of the trial court.
 
 
                                                             Elsa Alcala
                                                             Justice

Panel consists of Justices Alcala, Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).