COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-066-CR

 

 

MICHAEL KENNEDY                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  Introduction








A jury found Appellant Michael Kennedy guilty of
second-degree felony possession of a controlled substance,
methamphetamine.  See Tex. Health
& Safety Code Ann. ' 481.115(c) (Vernon
2003).  The jury assessed punishment at
twenty years= confinement and a $10,000.00
fine.  The trial court sentenced Kennedy
accordingly.  In two issues, Kennedy
argues that the trial court improperly admitted the testimony of an incompetent
witness and that the evidence was insufficient to prove that Kennedy possessed
methamphetamine.  We will affirm.

II.  Background

On April 5, 2007, police arrested Kennedy on an
outstanding warrant.  The next day,
Alicia Graham called the police claiming that Kennedy had called her from jail
and told her that he had discarded Asome
methamphetamine@ in the area where he was
arrested.  The jail routinely tracks and
records inmate phone calls using a personal identification number (PIN).








Denton police investigator Frank Padgett obtained
copies of and listened to phone calls from the jail that were made using
Kennedy=s
PIN.  Phone calls were made under Kennedy=s PIN to
Graham=s phone
number.  In one of the calls, a male
voice states that he Agot real lucky@ when he
threw Asomething@ that Alook[ed]
like a piece of white pipe . . . rolled up tight . . .
caddy corner [to the corner where Kennedy was arrested].@  Based on these calls, Denton police
investigators went to the intersection of Panhandle and Ector StreetsCthe
intersection described by the male voice in the phone conversationsCand
found a small package wrapped in tape. 
The contents of the package included a plastic baggie wrapped in tape
with contents that tested positive for methamphetamine, weighing just under two
grams.  One of the investigators
testified that the package was found roughly forty-one feet from where Kennedy
was arrested the previous day.

Before testifying at trial, defense counsel took
Graham on voir dire to determine whether she was competent to be a witnessCarguing
that Graham was mentally ill due to her diagnosed bipolar disorder and the
medications she took in treating the disorder. 
The trial court ruled Graham competent to testify.  Graham stated that she had called the police
prior to Aset[ting Kennedy] up.@  She also said that it was fair to
characterize her attempts to facilitate Kennedy=s
incarceration as a way to terminate her extramarital relationship with
him.  After hearing the facts and
testimony above, a jury convicted Kennedy of possession of a controlled
substance.  This appeal followed.

III.  Discussion

In his first issue, Kennedy argues that the trial
court abused its discretion by allowing Graham to testify.  Kennedy argues that Graham was mentally
incompetent to testify and that the trial court erroneously admitted the
recorded phone calls through Graham=s
testimony.  

A.     Competency
of Witness








In part of his first issue, Kennedy argues that
the record shows that Graham was incompetent to testify because of her
diagnosed bipolar disorder and the side effects of the medications she took
treating her disorder.  Thus, Kennedy
argues, the trial court abused its discretion by allowing Graham to testify. 

As a general rule, every person is presumed
competent to testify.  Tex. R. Evid.
601(a); Broussard v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995), cert.
denied, 519 U.S. 826 (1996).  But
persons who, in the opinion of the trial court, Aare in
an insane condition of mind at the time when they are offered as a witness, or
who . . . were in that condition when the events happened of which
they are called to testify,@ are
incompetent to testify.  Tex. R. Evid.
601(a)(1).  In determining whether a
witness is competent to testify, the trial court should consider whether the
witness has the competence to observe intelligently the events in question at
the time of their occurrence, the capacity to recollect the events, and the
capacity to narrate them.  See Lewis
v. State, 126 S.W.3d 572, 576 (Tex. App.CTexarkana
2004, pet. ref=d) (citing Watson v. State,
596 S.W.2d 867, 870B71 (Tex. Crim. App. 1980)).

When reviewing a ruling on a witness=s
competence to testify, we review the totality of the witness=s
testimony including the competency hearing and the trial.  Reyna v. State, 797 S.W.2d 189, 191B92 (Tex.
App.CCorpus
Christi 1990, no pet.).  We review a
trial court=s ruling concerning competency
of a witness under an abuse of discretion standard.  See Broussard, 910 S.W.2d at 960.








In this case, the trial court, the State, and
defense counsel all questioned Graham outside the presence of the jury
concerning her competency as a witness. 
Defense counsel and the State again questioned Graham in the presence of
the jury.  Graham testified that she was
currently being treated for bipolar disorderCa
condition that she has suffered A[o]ver
ten years.@ 
Graham said that she had been treated by two different physicians
continuously since she was nineteen and that sheCat the
time of trial and at the time of the events leading to Kennedy=s arrestCtook Aeight
prescriptions@ to treat her disorder.  Graham admitted that she had been
institutionalized for her disorder Afour or
five@ times
and that she had attempted suicide on multiple occasions.  Graham even testified to having Amade a
trip to California and just didn=t know
why.@

Graham, however, also testified that despite her
condition she was able to function in everyday life.  Graham said that even with her disorder, she
had earned a college degree in English and had successfully held a job as a
substitute teacher.  She also stated that
she was married and had children and that it had Abeen
years@ since
the last time she had experienced an episode with her bipolar disorder to a
point that it disabled her from doing something.








In the presence of the jury, Graham was able to
narrate how she had a long-term extramarital relationship with Kennedy.  She was also able to recollect the events
surrounding her involvement with Kennedy=s
arrest.  Graham testified that Kennedy
had called her and told her where he had discarded methamphetamine and that she
had called the police and relayed what Kennedy had told her.  Graham=s
recollection of these events was corroborated by both the recorded calls and
the investigators who testified that Graham had called the police relaying the
information from the calls.

Focusing on Graham=s
bipolar disorder, the isolated episode of traveling to California, and her
admitted suicide attempts, Kennedy claims that Athe
record clearly shows that [Graham=s]
. . . mental infirmities hinder her ability to form accurate
impressions of events she sees and retain a clear recollection of them.@  But Kennedy does not point to any testimonial
statement by Graham regarding the events that led to his arrest that
demonstrates she did not fully recollect the event.  Further, nothing in the record indicates that
Graham was unable to observe intelligently the events surrounding her phone
conversations with Kennedy that led to his arrest.  In short, the record demonstrates that the
trial court reasonably could have found that Graham was competent to testify.  We overrule this portion of Kennedy=s first
issue.








In the remainder of his first issue, Kennedy
argues that the phone recordings associated with his jail PIN were erroneously
admitted under Graham=s testimony.  Kennedy does not cite to any authority nor
does he analyze any legal proposition for his position.  See Tex. R. App. P. 38.1(i).  Because this argument is within the section
contesting the trial court=s
permitting Graham to testify, we interpret Kennedy=s
argument to be that the trial court erred by allowing the State to admit these
phone calls based on Graham=s
alleged incompetency.  Because we have overruled
Kennedy=s issue
pertaining to the trial court=s
allowing Graham to testify, we also overrule the remainder of his first issue.

B.       Sufficiency of the Evidence

In part of his second issue, Kennedy argues that
the evidence Aat trial was legally and
factually insufficient to prove [Kennedy] knowingly or intentionally possessed
a controlled substance . . . .@  Although Kennedy couches his challenge as
both a legal and factual sufficiency challenge, he has not properly raised a
factual sufficiency point of error. 








This court has the authority to review factual
sufficiency in criminal cases, but we may do so only if the issue is Aproperly
raised.@  Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996).  A factual
sufficiency point is properly raised only if it is specified in a separate
point, sets out the proper standard of review, and analyzes why the facts fall
short of that standard.  See id.; see
also Patterson v. State, 46 S.W.3d 294, 305 (Tex. App.CFort
Worth 2001, no pet.); Moon v. State, 44 S.W.3d 589, 593 (Tex. App.CFort
Worth 2001, pet. ref=d).  Kennedy does not discuss in his brief a
separate issue pertaining to factual sufficiency of the evidence, nor does he
discuss the applicable standard, analyze any disputed material facts, or
attempt to explain why the evidence supporting his conviction is factually
insufficient.  Kennedy mentions Afactual
sufficiency@ only once, and that is under
his point heading AThe Evidence Is Legally
Insufficient . . . .@  Because Kennedy has failed to properly raise
a factual sufficiency point, we will conduct only a legal sufficiency
review.  See Cardenas v. State, 30
S.W.3d 384, 386 n.2 (Tex. Crim. App. 2000) (conducting only a legal sufficiency
review when defendant, despite having requested A[i]n a
single sentence at the conclusion of his [sufficiency of the evidence] point of
error . . . that [the court] conduct a factual sufficiency review,@
otherwise made no reference to the factual sufficiency of the evidence nor the
applicable standard); Chavero v. State, 36 S.W.3d 688, 693 (Tex. App.CCorpus
Christi 2001, no pet.) (conducting only a legal sufficiency review when
defendant argued only that his Aconviction
should be vacated and a judgment of acquittal entered because there was
insufficient evidence to establish all of the necessary elements@ of the
offense but failed to reference factual sufficiency or the applicable standard
of review).








1.     Standard
of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.

The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically
correct jury charge for the case.  Grotti
v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953
S.W.2d at 240.  We may not, however,
affirm a conviction based on legal or factual grounds that were not submitted
to the jury.  Malik, 953 S.W.2d at
238 n.3.  The law as authorized by the
indictment means the statutory elements of the charged offense as modified by
the charging instrument.  See Curry v.
State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

The standard of review is the same for direct and
circumstantial evidence cases; circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor.  Clayton, 235 S.W.3d at 778; Hooper,
214 S.W.3d at 13.








2.     Links

To support a conviction for unlawful possession
of a controlled substance, the State must link the accused to the contraband by
proving that the accused (1) exercised control, management, or care over the
contraband and (2) knew the substance he possessed was contraband.  See Tex. Health & Safety Code Ann.
'' 481.002(38),
481.112(c); Poindexter v. State, 153 S.W.3d 402, 405B06 (Tex.
Crim. App. 2005); Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App.
1995).  When the accused is not in
exclusive possession of the place where the substance is found, it cannot be
concluded that he had knowledge of and control over it unless there are additional
independent facts and circumstances which link him to the contraband.  Poindexter, 153 S.W.3d at 406.  That is, the evidence must establish, to the
requisite level of confidence, that the accused=s
connection with the drug was more than just fortuitous.  Id. at 405B06; Tucker
v. State, 183 S.W.3d 501, 510 (Tex. App.CFort
Worth 2005, no pet.).








Links can be proven by direct or circumstantial
evidence.  Brown, 911 S.W.2d at
747.  Factors we consider include (1)
Appellant=s presence when the search
warrant was executed, (2) whether the drugs were in plain view, (3) Appellant=s
proximity to and the accessibility of the drugs, (4) whether he was under the
influence of narcotics when arrested, (5) whether he possessed other contraband
or narcotics when arrested, (6) whether he made incriminating statements when
arrested, (7) whether he attempted to flee, (8) whether he made furtive
gestures, (9) whether there was an odor of the contraband, (10) whether other
contraband or drug paraphernalia were present, (11) whether he owned or had the
right to possess the place where the drugs were found, (12) whether the place
where the drugs were found was enclosed, (13) whether he was found with a large
amount of cash, and (14) whether his conduct indicated a consciousness of
guilt.  See Tucker, 183 S.W.3d at
510.

The State only presented evidence on some of
these factors.  But the number of
relevant factors is less significant than the logical force of the link they
establish between the accused and the controlled substance.  See Hudson v. State, 128 S.W.3d 367,
374 (Tex. App.CTexarkana 2004, no pet.).  Links are established by the totality of the
circumstances.  See Wootton v. State,
132 S.W.3d 80, 87 (Tex. App.CHouston
[14th Dist.] 2004, pet. ref=d).








Kennedy was initially arrested near Panhandle and
Ector Streets in Denton.  The day after
his arrest, an inmate with a male voice and using Kennedy=s PIN
called Graham from jail.  The caller told
Graham that when he was arrested, A[T]here
was something in [his] pocket but [he] threw it [away],@ that it
might still be there, that it was Arolled
up with tape,@ and that it looked Alike a
piece of white pipe, it=s rolled up tight.@  The caller described that what he had thrown
away would be near Athe closest corner to that house
[near Panhandle and Ector Streets]@ and
that it would be Acaddy corner@ from
where he was arrested.

Despite explaining to Graham that he did not want
to discuss what he had thrown away Aon the
phone,@ the
caller asked Graham to Acheck on . . . that
other@
multiple times.  After explaining how he
had thrown Asomething@ away,
he told Graham, AI got real lucky, you know what
I mean?  Real lucky.@  During one of the calls, the caller explained
how he was Adying,@ and
Graham replied that she understood and that she was also Asweating,
[] detoxing, and feeling [terrible].@  In another call, the caller asked Graham, A[W]hat
about that other?@ 
When Graham explained that she had not looked for what the caller had
thrown from his pocket because she did not want to Aget in
trouble with it,@ the caller replied A[Y]ou
won=t.@

After listening to the phone conversations,
investigators searched the area of Kennedy=s arrest
and located a small package wrapped in tape. 
The contents of the package tested positive for methamphetamine,
weighing approximately two grams.  The
location where the methamphetamine was found was approximately forty-one feet
from where Kennedy was arrested the previous day.








Based on the totality of the circumstances and
viewing the evidence in the light most favorable to the verdict, we hold that
there was legally sufficient evidence to support that a rational trier of fact
could have found that Kennedy exercised care, custody, control, and management
over the methamphetamine and that he knew the substance he possessed was
contraband.  See Curry, 30 S.W.3d
at 406; see also Tucker, 183 S.W.3d at 510B11
(holding that proximity and drugs in plain view were sufficient to establish
the necessary links).  We overrule this
part of Kennedy=s second issue.

C.     Corroboration
Evidence of a Covert Agent








In the remainder of his second issue, Kennedy
argues that the jury=s verdict was based on the
insufficiently corroborated testimony of a covert agent in contravention of
Texas Code of Criminal Procedure article 38.141.  See Tex. Code Crim. Proc. Ann. art.
38.141 (Vernon 2005).  Kennedy argues
that Graham believed she was working with the police to Aset
[him] up.@ 
Kennedy further argues that because Graham testified that she was able
to terminate her extramarital affair with Kennedy by his incarceration, Graham
was an informant for article 38.141 purposes because she had a Amotive
or hope for personal gain.@  See Simmons v. State, 205 S.W.3d 65,
72 (Tex. App.CFort Worth 2006, no pet.).  Thus, Kennedy argues, without Graham=s
testimony the evidence is insufficient to support the jury=s
verdict under the covert-agent rule.  See
Malone v. State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008).

We will assume without deciding that article
38.141 applies to Graham and that she was an informant or covert witness
working with the police for self-interested reasons.  See Cantelon v. State, 85 S.W.3d 457,
460 (Tex. App.CAustin  2002, no pet.) (discussing who qualifies as a
covert agent under article 38.141). 








The standard for evaluating sufficiency of the
evidence for corroboration under the accomplice‑witness rule applies when
evaluating sufficiency of the evidence for corroboration under the covert‑agent
rule.  Malone, 253 S.W.3d at
258.  When evaluating the sufficiency of
corroboration evidence under the accomplice‑witness rule, we Aeliminate
the accomplice testimony from consideration and then examine the remaining
portions of the record to see if there is any evidence that tends to connect
the accused with the commission of the crime.@  Solomon v. State, 49 S.W.3d 356, 361
(Tex. Crim. App. 2001).  To meet the
requirements of the rule, the corroborating evidence need not prove the
defendant=s guilt beyond a reasonable
doubt by itself.  Trevino v. State,
991 S.W.2d 849, 851 (Tex. Crim. App. 1999); Gill v. State, 873 S.W.2d
45, 48 (Tex. Crim. App. 1994).  Rather,
the evidence must simply link the accused in some way to the commission of the
crime and show that Arational jurors could conclude
that this evidence sufficiently tended to connect [the accused] to the
offense.@  Hernandez v. State, 939 S.W.2d 173,
179 (Tex. Crim. App. 1997) (emphasis original).

There is no set amount of nonaccomplice
corroboration evidence that is required for sufficiency purposes; A[e]ach
case must be judged on its own facts.@  Gill, 873 S.W.2d at 48.  The court of criminal appeals has held that
circumstances that are apparently insignificant may constitute sufficient
evidence of corroboration.  Trevino,
991 S.W.2d at 852.  Additionally, the
court of criminal appeals has stated that A[p]roof
that the accused was at or near the scene of the crime at or about the time of
its commission, when coupled with other suspicious circumstances, may tend to
connect the accused to the crime so as to furnish sufficient corroboration to
support a conviction.@ 
Brown v. State, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984).  But Amere
presence alone of a defendant at the scene of a crime is insufficient to
corroborate accomplice testimony.@  Golden v. State, 851 S.W.2d 291, 294
(Tex. Crim. App. 1993) (citing Meyers v. State, 626 S.W.2d 778, 780
(Tex. Crim. App. 1982)). 








 In this
case, even without Graham=s testimony, jurors could have
linked Kennedy to possession of the methamphetamine that the investigators
found.  The phone conversations that the
jury heard were made from Kennedy=s
PIN.  The male voice in the phone
conversations identified himself as MikeCKennedy=s first
name is Michael.  The male voice
described how he had been arrested at the corner where the methamphetamine was
found.  The phone number called from
Kennedy=s PIN
was Graham=s.  The woman=s voice
stated that she would call the Denton jail and inquire about AMichael
Kennedy.@

During the course of the phone conversations, the
male voice described where and how he had thrown something away that looked Alike a
piece of white pipe@ while he was being arrested in
the area where investigators located a small package of methamphetamine wrapped
in a plastic baggie with tape.  Taken as
a whole, the jury could have rationally found that the corroborating evidence
tended to connect Kennedy to the methamphetamine found by the
investigators.  We overrule the remaining
portion of Kennedy=s second issue.

IV.  Conclusion

Having overruled both of Kennedy=s
issues, we affirm the trial court=s
judgment.  

BILL
MEIER

JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and
MEIER, JJ.     

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  May 21, 2009











[1]See Tex. R. App. P. 47.4.