In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00166-CR
______________________________


KASSAN KHALID MORGAN, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the Criminal District Court No. 3
Dallas County, Texas
Trial Court No. F-0453120-LJ


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Kassan Khalid Morgan was convicted in a trial to the court of aggravated robbery
of an elderly person.


 He pled true to an enhancement paragraph of the indictment
alleging one prior felony conviction. The trial court assessed Morgan's punishment at
twenty years' imprisonment and sentenced him accordingly. Morgan appeals,


 contending
in a single point of error that the evidence is factually insufficient to prove his identity. We
affirm.
          The State's evidence showed that, at around 7:00 o'clock on the morning of
June 17, 2004, Chausie Springfield, age seventy-four, was waiting for a bus to take her to
work. She testified that, while at the bus stop, a man wearing a black head scarf, a white
undershirt, and black jeans walked up to her, "snatched" her "stick" from her and said, "If
you don't give me that purse, I'm going to take it." She did not; he did, and in the process,
caused Springfield's arm to bleed, caused her pain, and placed her in fear of imminent
bodily injury. The man fled with her purse, jumping over a nearby fence. Springfield's
purse contained $40.00 in bills, about $3.00 in change, her house keys, Medicare card,
identification card, and voter registration card. 
          Rodrick Roddy, an Army reservist, testified that, on the occasion in question, he was
driving his vehicle in the far right lane of the street where the bus stop is located. Roddy
observed, through an open window on the passenger side of his vehicle, a man forcibly
take a lady's purse from her and run away. Roddy circled the block unsuccessfully looking
for the assailant. Roddy then called 9-1-1 and reported the robbery. In his description of
the assailant to the 9-1-1 operator, and later to the police, Roddy described the man as
wearing a black "do rag" or scarf on his head, a white "tank top" shirt, black jean shorts,
and white shoes. Approximately fifteen minutes after Roddy called 9-1-1, the police arrived
at the scene. They apprehended Morgan and took Springfield to where Morgan was being
held. While still in the officer's vehicle, Springfield identified Morgan as the man who
robbed her.
          Both Springfield and Roddy identified Morgan in court as the person who robbed
Springfield. Springfield testified twice that she was "100 percent" sure Morgan was the
robber.
          Morgan testified on his own behalf, stating that, on the date in question, he lived and
worked near the location where the robbery occurred. He further testified that, on the
morning of the robbery, he was sitting a couple of blocks away, talking to a person about
getting work. He said that is where the police arrested him, and that he was wearing a
white "muscle" shirt, blue jeans, and burgundy-colored shoes. He testified that, at the time
of his arrest, he did not have any currency, did not have a Medicaid card on him, and did
not have a purse. Morgan testified he did not rob Springfield. Morgan admitted on
cross-examination he had previous convictions for theft, robbery, drugs, and family
violence. 
          In a factual sufficiency review, the appellate court views all the evidence in a neutral
light and determines whether the evidence supporting the verdict is too weak to support
the finding of guilt beyond a reasonable doubt or if evidence contrary to the verdict is
strong enough that the beyond-a-reasonable-doubt standard could not have been met.
Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga v. State,
144 S.W.3d 477, 486 (Tex. Crim. App. 2004)). If the evidence is factually insufficient, then
we must reverse the judgment and remand for a new trial. Clewis v. State, 922 S.W.2d
126, 135 (Tex. Crim. App. 1996).
          Morgan contends the evidence in this case is insufficient to prove guilt beyond a
reasonable doubt because Springfield testified the offense occurred in only a few seconds,
that the robber was a stranger, and that the assailant immediately fled. He further
contends her identification was bolstered by her viewing of him when police arrested him
and took him to her house for a one-man show-up identification. He contends Roddy's
identification is likewise insufficient because Roddy was in a moving car when he observed
the occurrence. Morgan further contends the prosecutor's action of standing behind
Morgan at trial when asking for an in-court identification served to diminish the credibility
of both witnesses' in-court identifications.
          Morgan made no objections at trial to the identification procedures used by the
police or the prosecutor, and such procedures are not raised as separate issues in this
appeal. As such, Morgan's argument on appeal concerns only the weight and credibility
of the evidence establishing his identity as the robber.
          The trial court, as trier of fact, is the sole judge of the credibility of the witnesses and
of the strength of the evidence. Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.
1999). What weight to give a witness' identification testimony is therefore within the sole
province of the fact-finder, because it turns on an evaluation of credibility and demeanor. 
See Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997). Whether the viewing
of Morgan by Springfield or Roddy was too brief, or insufficiently clear, was for the
fact-finder alone to determine. Whether the one-man show-up, or the prosecutor's
(improper, but unobjected-to) action of standing behind the defendant when asking
Springfield and Roddy to identify Morgan influenced the witnesses' identification of Morgan
as the robber was likewise for the fact-finder to determine. 
          It is well-established that a conviction may be based on the testimony of a single
eyewitness. Lewis v. State, 126 S.W.3d 572, 575 (Tex. App.—Texarkana 2004, pet. ref'd). 
Here, two eyewitnesses testified that Morgan was the person who robbed Springfield. This
testimony was not too weak to support a finding of guilt beyond a reasonable doubt, and
there is no contrary evidence of identity that is so strong that the standard of proof beyond
a reasonable doubt could not have been met. We overrule Morgan's sole point of error.
          We affirm the judgment.



                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      January 6, 2006
Date Decided:         January 12, 2006 

Do Not Publish



Roman', serif">(Emphasis added.)

            Wallace now contends the trooper's testimony is insufficient to support the trial court's ruling. 
Wallace cites Ford v. State, 158 S.W.3d 488 (Tex. Crim. App. 2005), in support of his contention
that the trial court erred. In Ford, the Texas Court of Criminal Appeals reiterated the well-settled
maxim that 
[a]n officer conducts a lawful temporary detention when [the officer] has reasonable
suspicion to believe that an individual is violating the law. Reasonable suspicion
exists if the officer has specific, articulable facts that, when combined with rational
inferences from those facts, would lead [the officer] to reasonably conclude that a
particular person actually is, has been, or soon will be engaged in criminal activity.
Id. at 492. The court then described the officer's testimony at Ford's suppression hearing as too
conclusory, too opinionated, and too devoid of sufficient, specific facts to support the officer's
opinion. The evidence was insufficient because the officer had stated only that Ford was "following
too close." Id. at 493. Therefore, the trial court erred by denying Ford's motion to suppress. Id. The
court commented: 
The record reveals an absence of any facts allowing an appellate court to determine
the circumstances upon which [the officer] could reasonably conclude that Ford
actually was, had been, or soon would have been engaged in criminal activity. 
Instead, the trial court was presented only with a conclusory statement that Ford was
violating a traffic law. We do not quarrel with the notion that [the officer] may have
in fact believed that Ford was following another car too closely. Nor do we dispute
that the trial judge is free to believe or disbelieve [the officer's] testimony. But
without specific, articulable facts, a court has no means in assessing whether this
opinion was objectively reasonable.

Id. The court then reversed Ford's conviction. Id. at 494.
            The record before us presents facts that clearly distinguish this case from Ford. "An operator
on a roadway divided into two or more clearly marked lanes for traffic: . . . (2) may not move from
the lane unless that movement can be made safely." Tex. Transp. Code Ann. § 545.060(a)(2)
(Vernon 1999). As outlined above, Washington testified that, when Wallace changed lanes, he
pulled his vehicle in front of another car and caused the driver of this second car to have to apply
the brakes because Wallace was too close. Washington also told the trial court that those two
vehicles were "[p]robably a car length or less" apart when Wallace made the lane change. This
officer's testimony presents clear, concrete facts from which the trial court could determine whether
the officer did indeed have "specific, articulable facts," which when viewed under the totality of the
circumstances could lead the officer to reasonably conclude Wallace had violated a traffic law. 
Thus, the evidence in this case is not merely that the officer said, "I saw the defendant commit
violation X," with no explanation of the facts underlying the alleged violation. Instead, the evidence
in this case is that the officer described certain acts he observed Wallace commit that could lead the
officer to conclude Wallace violated a traffic law.
            We conclude that the record from the suppression hearing contains sufficient, articulable
facts from which the trial court could have determined Trooper Washington's initial detention of
Wallace was objectively reasonable under the totality of the circumstances. The trial court did not
err in denying Wallace's motion to suppress. 
            We overrule Wallace's sole point of error and affirm the trial court's judgment.



                                                                        Jack Carter
                                                                        Justice


Date Submitted:          November 30, 2005
Date Decided:             December 20, 2005

Do Not Publish