Opinion issued May 19, 2011.


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00391-CR

———————————

Mark Owens, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 248th District Court

Harris County, Texas



Trial Court Case No. 1217662

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Mark Owens of murder, and he was given an agreed
sentence of life imprisonment. See Tex. Penal Code Ann. § 19.02(b) (West
2003). On appeal, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction. We hold that the evidence is legally and
factually sufficient and affirm the trial court’s judgment.

Background

          Appellant
was convicted of shooting and killing Marquita Brown on Memorial Day 2009. On
that day, Brown spent time with appellant, with whom she was romantically
involved, and her two best friends, Kimly King and Tracy Shepard, and their
boyfriends. King picked up Brown and appellant at Shepard’s apartment, where
Brown was staying. King saw a gun on the window sill in the back bedroom of the
apartment. King, Brown and appellant went to King’s boyfriend’s house, where
they met up with Shepard and her boyfriend and children. They ate, watched
movies and talked. King and Shepard witnessed Brown and appellant arguing
throughout the day. 

Later, the group decided to go to a
local sports bar. Shepard took her children home, where King would pick her up
later. King, Brown and appellant went to the apartment where Brown was staying
so that Brown could change her clothes. At the apartment, Brown and appellant
went inside while King stayed in the car. Fifteen to twenty minutes later,
appellant returned to the car alone and asked King to take him home.

          King
took appellant home and was preparing to leave when appellant asked her to wait
for him while he went inside to get some money to give to Brown. Appellant
returned to the car five to ten minutes later and asked her to take him to the
store to get change because he had only a fifty-dollar bill. King declined to
take appellant to the store but drove him back to the apartment where Brown
was. King stayed in the car while appellant went inside. After a few minutes,
appellant appeared on the apartment balcony and told King that Brown needed
help with her hair. When King went inside, she saw Brown’s body lying on the
floor in the master bedroom. Appellant placed a gun to King’s head and said,
“Don’t say nothing and don’t scream.” Appellant repeatedly stated that he “had
to do it” and that Brown thought he “was playing with her.” Appellant forced
King into a bedroom, where he used a cord to bind her hands and feet behind her
and placed her on the bed. King begged appellant not to kill her. 

          A man
called “Corey” then knocked on the apartment door. Corey knocked several times
and left when no one answered. After Corey left, appellant placed a phone call
in which he told the person on the other line, “I’ve got her cousin with me, I
did it,” and gave the person King’s name and address. He told the other person
that if anything happened to him or he went to jail, the person should kill
King and her baby. Appellant then untied King and proceeded to ransack the
apartment in an effort to make it look as if Brown had been robbed. Appellant
placed several items in a black trash bag and took a key to the apartment from
Brown’s back pocket. Appellant and King then left the apartment. Appellant
disposed of the black trash bag in a storm drain.

          Appellant
told King to call Shepard and say that Brown was not coming as planned because
she had passed out. Appellant threatened to shoot King in the head if she said
anything to Shepard about what had happened. When Shepard got in the car,
appellant sat in the back seat with his gun in his lap. King, Shepard and
appellant proceeded to a bar. On the way, Shepard called Corey, who met them at
the bar. They did not go inside the bar but spoke to Corey when he came over to
their car. Shepard and Corey noticed that King was smoking a lot and appeared
nervous.

When they left, King dropped off
Shepard, and appellant instructed her to drive him to a nearby apartment
complex. Appellant placed his gun to King’s head and told her he should shoot
her and dump her body in the woods. King convinced appellant she would not tell
anyone what happened, and appellant then told her to drive him to the apartment
where they had left Brown’s body. They went inside the apartment briefly, at
which time appellant returned the apartment key to Brown’s pocket. King then
drove appellant home. When they arrived at his house, appellant took King’s
license from her and entered her contact information into his cell phone. He
tried to make her touch his gun, but she refused. He then told King to go
straight home and not to call or speak to anyone. He also stated that he might
follow her and that she would never know if he was watching her or not.

          When King
returned to her boyfriend’s home, she fell to the floor crying and screaming,
“He killed her. He killed her.” She told her boyfriend that appellant had shot
and killed Brown. At this time, appellant called the house. He told King to
call Shepard and ask her if she had heard from Brown. At one point, King’s
boyfriend picked up the phone and overheard appellant tell King to report Brown
missing in the morning and to remember what he had said. King and her boyfriend
went to Shepard’s boyfriend’s house to tell Shepard what had happened. King, her
boyfriend, and Shepard then went to the police. 

In the meantime, appellant, who had
been acting as a confidential informant for the narcotics division of the
Houston Police Department, contacted Officer Scales and told him that a woman
named Marquita was transporting narcotics between Houston and Mississippi.
Appellant took Officer Scales and his partner to the apartment where he had
left Brown’s body, telling them that Marquita lived there. When they neared the
apartment, the police were already there. At this time, appellant “became
frantic” and said, “We got to get out of here.” Officer Scales and his partner
were informed of the homicide and that the victim was Marquita Brown. Officer
Scales then showed appellant a picture of Brown, at which point appellant
stated that he wanted to leave. Officer Scales’s partner later informed him
that appellant, also known as “Big O,” was a suspect. Officer Scales asked
appellant if he knew “Big O,” at which point appellant “reacted strongly” and
said, “They’re going to think I did this.” Soon after, appellant was arrested
and charged with Brown’s murder. 

Brown’s autopsy indicated that the
gun had been placed against her head when she was shot. The police recovered a
black cord that was tied in a double-loop from the apartment where Brown’s body
was found. King took the police to the place where appellant had disposed of
the black trash bag. The police recovered the bag at that location. Inside the
bag, they found a Hawaiian Punch Can, several cigarette butts, a deck of cards,
and a paper labeled, “Reality Assessment Program (R.A.P.).” There was testimony
at trial that appellant claimed to work with an organization called Reality
Assessment Community Outreach Program, and at the time of appellant’s arrest,
he had a card in his wallet identifying him as an anger therapist, CEO and
founder of “Reality Assessment Community Outreach Program, Home of the R.A.P.
Program.”

Standard of Review

Both legal and factual sufficiency challenges are reviewed
under the standard set forth in Jackson
v. Virginia, 443 U.S. 307, 99 S. Ct. 27 (1979). Brooks v. State, 323 S.W.3d 893, 895 (Tex. Crim. App.
2010). Under this standard, evidence is insufficient to support a conviction
if, considering all the record evidence in the light most favorable to the
verdict, no rational factfinder could have found that each essential element of
the charged offense was proven beyond a reasonable doubt. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2788–89;
 In re Winship, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071
(1970); Laster v. State,
275 S.W.3d 512, 517 (Tex. Crim. App. 2009); Williams v. State, 235 S.W.3d 742, 750 (Tex. Crim. App.
2007). Viewed in the light most favorable to the verdict, the evidence is
insufficient under this standard in two circumstances: (1) the record contains
no evidence, or merely a “modicum” of evidence, probative of an element of the
offense; or (2) the evidence conclusively establishes a reasonable doubt. See
Jackson, 443 U.S. at 314,
318 n.11, 320, 99 S. Ct. at 2789 n. 11, 2789–90; Laster, 275 S.W.3d at 518; Williams, 235 S.W.3d at 750. Additionally,
the evidence is insufficient as a matter of law if the acts alleged do not
constitute the criminal offense charged. Williams, 235 S.W.3d at 750.

An appellate court determines whether the necessary
inferences are reasonable based upon the combined and cumulative force of all
the evidence when viewed in the light most favorable to the verdict. Clayton
v. State, 235 S.W.3d 772, 778 (Tex. Crim.       App. 2007) (quoting Hooper v. State, 214 S.W.3d 9, 16–17 (Tex. Crim. App.
2007)). In viewing the record, direct and circumstantial evidence are treated
equally. Id. Circumstantial evidence is as probative as direct evidence
in establishing an actor’s guilt, and circumstantial evidence alone can be
sufficient to establish guilt. Id. An appellate court presumes that the
factfinder resolved any conflicting inferences in favor of the verdict and
defers to that resolution. Jackson,
443 U.S. at 326, 99 S. Ct. 2793; Clayton, 235 S.W.3d at 778. An appellate court also defers to the
factfinder’s evaluation of the credibility and weight of the evidence. See
Williams, 235 S.W.3d at
750.

Sufficiency of the Evidence

A person commits murder if he
intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1). Appellant’s
primary contention on appeal is that the evidence is legally and factually
insufficient because the State’s case rests too heavily on the testimony of a
single witness: King. However, “[i]t is well established that a conviction may be based on the testimony
of a single eyewitness.” Davis v. State, 177 S.W.3d 355, 359 (Tex. App.—Houston
[1st Dist.] 2005, no pet.) (citing Aguilar v. State, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971);
Lewis v. State, 126
S.W.3d 572, 575 (Tex. App.—Texarkana 2004, pet. ref’d)). “The determination of
what weight to give testimonial evidence is within the sole province of the
jury, as it turns on an evaluation of credibility and demeanor.” Id. (citing Cain v. State, 958 S.W.2d 404, 408–09 (Tex. Crim. App. 1997)). The
jury is free to believe or disbelieve all or any part of a witness’s testimony.
Id. This court must defer to the jury’s assessment of a witness’s credibility.
Williams, 235 S.W.3d at
750.

Additionally, King’s testimony was supported by
corroborating evidence. The police found a black trash bag in the storm drain
where King said appellant had discarded it. The bag contained a paper from the
Reality Assessment Program, corresponding to a card in appellant’s wallet
connecting him to the program. Appellant’s own witness also connected him to
the program. The police also found a black cord tied in a double-loop in a
bedroom in the apartment where Brown’s body was discovered. This is consistent
with King’s testimony that appellant tied her up with a black cord in the
apartment. King’s boyfriend also testified that appellant called King at his
house on the night of the murder and that he heard appellant tell King to
report Brown missing in the morning and remind her to remember what he had told
her. Cf. Scott v. State, No.
01–06–00151, 2007 WL 2264458, at *4 (Tex. App.—Houston [1st Dist.] 2007, no
pet.) (mem. op., not designated for publication) (observing that witness’s
voice identification was corroborated by cell phone records showing a call made
at the time alleged).

Appellant complains that the evidence is insufficient to
establish appellant’s motive for killing Brown. However, there is evidence that
appellant and Brown argued immediately before the murder. There was also
evidence at trial that Brown and appellant were romantically involved, that
appellant had a jealous nature, and that Brown was considering a move to
Atlanta, where she had another boyfriend. This is evidence of motive. Additionally,
although motive may be indicative of guilt, the State is not required to prove
motive in order to obtain a conviction for murder. Clayton, 235 S.W.3d at 781; Smith
v. State, 965 S.W.2d 509, 519 (Tex. Crim. App. 1998).

The
evidence demonstrates that: appellant and Brown argued throughout the day
before the murder; Brown and appellant were alone together in the apartment where
Brown was shot around the time of the murder; no one else was seen entering or
leaving the apartment during this time; King went into the apartment
approximately twenty minutes after appellant entered and found appellant in the
apartment with Brown’s body; appellant had a gun with him; Brown died from a
pointblank gunshot wound to the head; appellant indicated to King that he shot
Brown and threatened to kill King if she told anyone what happened; appellant
took items from Brown’s apartment and disposed of them in a storm drain;
appellant contacted police and identified Brown as a drug dealer, leading them
to the apartment; and appellant reacted very strongly and made frantic efforts
to leave when he arrived with the police at the apartment and found other
police officers already there. Reviewing this evidence in the light most
favorable to the verdict, we hold that a rational trier of fact could have
found beyond a reasonable doubt that appellant intentionally or knowingly
caused Brown’s death. See Tex. Penal Code Ann. § 19.02(b)(1). Accordingly, we hold that the evidence was legally and
factually sufficient to support appellant’s conviction and affirm the trial
court’s judgment. See Jackson, 443
U.S. at 319; Laster, 275
S.W.3d at 517; Williams,
235 S.W.3d at 750.

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley and Bland.

Do
not publish.   Tex. R. App. P. 47.2(b).