

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-11-00014-CR

_____

LISA OVERSTREET MASSEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. One
Angelina County, Texas
Trial Court No. 10-0641

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM   OPINION

Lisa Overstreet Massey appeals her conviction by a jury for driving while intoxicated (DWI).[1]   Officer Jimmy Marble, of the Huntington Police Department, and Trooper Brian Henry, of the Texas Department of Public Safety (DPS), were dispatched to investigate a one-vehicle accident.   When Marble arrived, he observed a white SUV facing south in the ditch on the northbound side of the road.   Massey admitted to being the driver.   The State alleged Massey did not have normal use of her mental and physical faculties by reason of the introduction of carisoprodol (commonly prescribed under the brand name as Soma)—a drug which had been prescribed to Massey.   The jury found Massey guilty and the trial court assessed punishment at 180 days' confinement.   The trial court suspended the sentence and placed Massey on one year of community supervision.

Massey raises four issues on appeal.   First, Massey contends the evidence is insufficient to support the jury's verdict.   Second, Massey argues the trial court erred in overruling her objection to the State's chemist testifying about the psychological effects of carisoprodol.   Third, Massey alleges the trial court erred in denying her motion for a mistrial when the State's chemist testified hydrocodone had been detected in Massey's blood.   Finally, Massey claims the trial court abused its discretion in denying her motion for new trial.

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts.  *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).  We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

2

**The Evidence Is Sufficient**

In her first issue, Massey argues the evidence is legally insufficient. According to Massey, the State failed to prove she was driving on a public road and failed to prove the introduction of alcohol, drugs, or a combination thereof caused Massey's loss of use of physical or mental faculties. Massey argues that her condition was caused by a head injury sustained during the accident.

In evaluating sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of DWI beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When reviewing the sufficiency of the evidence, we must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see Neal v. State*, 256 S.W.3d 264, 277 (Tex. Crim. App. 2008).

The State introduced sufficient evidence for a rational juror to conclude Massey committed the offense while driving on a public road. Marble testified the roadway was a "gravel road," but was a "Huntington City street" and was a public place. The jury could make a reasonable deduction that a road, described as a city street and as a "public place," was a public road.

The State also introduced sufficient evidence that Massey did not have normal use of her physical and mental faculties by reason of the introduction of a drug. Marble testified that Massey's speech was slurred, she had difficulty staying awake, and she failed several field sobriety tests. During the one-legged-stand test, Massey was unable to hold her foot up longer than two or three seconds, used her arms for balance, and failed to count aloud as instructed. During the walk-and-turn test, Massey failed to walk a straight line, took ten steps instead of the instructed nine, failed to walk heel-to-toe, used her arms for balance, and was stumbling. The horizontal gaze nystagmus test was administered, but neither officer recorded the results.

The State introduced some evidence Massey's condition was not caused by a head injury. Marble testified he did not observe any injury to Massey's head. Trooper Henry also testified that he "never suspected any kind of injury, did not see any injury." Massey refused medical attention. Marble testified he did not observe anything unusual when examining Massey's pupils during the horizontal gaze nystagmus test.[2] The two officers agreed Massey was intoxicated, arrested her for DWI, and obtained consent for a blood sample to be taken.

---

[2]Marble testified a person who has suffered a severe head injury sometimes has one pupil larger than the other.

4

At trial, Eduardo Padilla, a chemist with the DPS Crime Laboratory, testified he analyzed the blood sample and detected the presence of carisoprodol and meprobamate.[3] Padilla testified the concentration of carisoprodol was 10 mg/L and the concentration of meprobamate was 27 mg/L. Padilla testified the concentration of carisoprodol, which can be prescribed under the brand name Soma, exceeded therapeutic levels. The concentration of carisoprodol in Massey's blood was 10 mg/L, while the therapeutic level is 2–6 mg/L. When asked whether any other drugs were identified, Padilla testified that a small amount of hydrocodone had been discovered. When the State asked Padilla "what a person would expect the effect of taking that medicine to be," Massey objected and challenged Padilla's qualifications. Following a brief voir dire outside the presence of the jury, the trial court found Padilla to be qualified as an expert witness. Padilla testified that carisoprodol causes drowsiness, dizziness, slurred speech, slurred vision, and lack of motor coordination.

We note that there is contrary evidence that Massey's condition may have been due to injuries sustained in the accident. Massey testified she has been taking carisoprodol for six years. Because she was having back muscle spasms on the day in question, Massey testified she took one carisoprodol in the morning before work and another after work approximately around 5:00 p.m. Massey testified, due to previous mercury poisoning, she was being closely monitored by her doctor. Massey testified she was taking her medication as prescribed, had met with her doctor the day before the accident, and was taking the same dosage she had always taken. Around 9:00 p.m.,

---

[3]A person's body converts carisoprodol into meprobamate.

5

Massey left home to go to a store to get cigarettes. Massey testified she swerved to avoid hitting a dog, hit a pothole, lost control, and veered into a ditch. Massey testified she hit her head on her windshield. Massey introduced pictures of the head injury, including dried blood. Massey testified that the head injury made her confused and that she had difficulty recalling the events of that evening. Officer Marble testified there was "egg-shaped" damage to the windshield of the car where Massey "hit her head."[4] Trooper Henry admitted a head injury could affect a person's "coordination ability," including the ability to perform field sobriety tests.

While we may not have reached the same decision as the jury, we are unable to conclude a rational juror could not find Massey guilty beyond a reasonable doubt. The weight and credibility of the evidence is the sole province of the jury—we will not substitute our judgment for that of the jury. *See Brooks*, 323 S.W.3d at 901–02. The evidence is sufficient.

**Any Error in Permitting the Chemist to Testify on the Effects of Soma Is Not Preserved**

Massey, in her second issue, complains that the trial court erred in overruling her objection to the State's expert concerning the "psychological effects of soma (carisoprodol)." Padilla testified he had a bachelor of science degree in biochemistry and had worked as a chemist for ten years. Padilla also testified he had completed an introductory graduate course in toxicology offered online by the University of Florida. Over objection, Padilla testified as follows:

> Q.   [State]   You're familiar with the psychological effects of carisoprodol?
> A.   [Padilla]   Yes.

---

[4]Marble, though, testified he did not observe any injury to Massey's head.

6

Q. What would those psychological effect[s] be?
A. Like I described earlier, it is a CMS depressant just like alcohol, so you could see those effects like drowsiness and dizziness, slurred speech, slurred vision and lack of motor coordination.
Q. Would confusion and disorientation be some of them, too?
A. . . . . Yes.

Immediately before this testimony, the trial court had overruled, outside the presence of the jury, a defense objection to Padilla's qualifications.

The Texas Rules of Evidence provide, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. In determining whether to admit an expert witness, the trial court must inquire whether: (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006).

The trial court's decision to admit expert testimony is reviewed for abuse of discretion. *Alvarado v. State*, 912 S.W.2d 199, 216 (Tex. Crim. App. 1995). The decision will be upheld unless it is outside the zone of reasonable disagreement. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). "Qualification is distinct from reliability and relevance and, therefore, should be evaluated independently." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006).

7

An expert witness must have both a sufficient specialized knowledge in a particular field, and that specialized knowledge "must be tailored to the specific area of expertise in which the expert desires to testify." *Id*. at 133; *see Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010).

It is not necessary, though, for us to decide whether Padilla was qualified to testify concerning the effects of carisoprodol on a person.[5] Prior to Massey's objection, Padilla testified—without objection—as follows:

> Q.    [State]   What is Soma normally taken for?
> A.    [Padilla]   It is a muscle relaxer usually given for back pain.
> Q.    If you categorized it, would it fall into the category of a central nervous system depressant?
> A.    Yes.
> Q.    What does a central nervous system depressant do?
> A.    It can produce effects like drowsiness and dizziness and slurred speech, blurred vision, and a lack of motor coordination.

If a defendant fails to object to other evidence proving the same matters as the objected-to testimony, reversible error has not occurred. *Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) (disapproving of term "curative admissibility," but noting disapproval "does not imply that the doctrine so named was unsound or misapplied"); *see Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010). The Texas Court of Criminal Appeals has noted "overruling an

---

[5]This opinion should not be relied upon as endorsing that an expert in one field can testify concerning another field. The Texas Court of Criminal Appeals has emphasized the importance of the "'fit' requirement." *Vela*, 209 S.W.3d at 133. We do not express any opinion concerning whether one introductory graduate level course taken online is enough to create sufficient specialized knowledge to qualify as an expert. We also do not express any opinion concerning whether the specialized knowledge of Padilla, whose specialized knowledge is primarily in chemistry, is a "fit" to the specific area of expertise in this case—the effects of the drug on a person.

objection to evidence after the same evidence has been admitted without objection" will not be reversible error.   *Leday*, 983 S.W.2d at 717.

While we note Padilla did not testify carisoprodol could cause "confusion and disorientation" until after Massey's objection, the objected-to testimony is substantially similar to his previous testimony admitted without an objection.   Even if the trial court erred in overruling Massey's objection, reversible error did not occur because evidence that was substantially the same had been previously admitted without objection.   The unobjected-to evidence does not have to be identical to the objected-to evidence—it must merely be "substantially the same."   *See Prieto v. State*, No. 07-10-00225-CR, 2011 Tex. App. LEXIS 2606 (Tex. App.—Amarillo Apr. 7, 2011, pet. filed) (quoting *Mayes v. State*, 816 S.W.2d 79, 88 (Tex. Crim. App. 1991)).   Because substantially the same evidence was admitted without objection, reversible error has not occurred. Massey's second issue is overruled.

**The Trial Court Did Not Err in Denying Massey's Motion for a Mistrial**

In her third issue, Massey argues the trial court erred in denying her motion for a mistrial. Padilla's report indicated he had detected the presence of two drugs—carisoprodol and meprobamate.   At trial, though, the State asked Padilla if any other drugs were identified and Padilla testified, "[W]e also saw a very small amount of hydrocodone . . . ."   Massey immediately objected and requested a hearing outside the presence of the jury.   Massey requested a mistrial because hydrocodone had not been listed in Padilla's report and the State had not otherwise

9

disclosed its detection.[6]  The trial court did not rule on the initial objection,[7] but explicitly denied the motion for a mistrial.

Although Massey did initially object, Massey never secured a ruling on the objection.   In addition, Massey did not request an instruction to disregard.   The only ruling the trial court made was to deny Massey's motion for a mistrial.   The Texas Court of Criminal Appeals stated in *Young v. State*:

> [W]hen a party's first action is to move for mistrial, as this appellant's was, the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial; in other words, an event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request these lesser remedies in the trial court.   Limited as this scope of appellate review may be, such an appellate review is available to such a party.

137 S.W.3d 65, 70 (Tex. Crim. App. 2004).   Because Massey failed to secure a ruling on the initial objection, this case is the functional equivalent of the situation in *Young*.   Therefore, the scope of our appellate review is limited to whether the trial court erred in denying the motion for mistrial.

The granting of a mistrial is an extreme remedy.   *Brossette v. State*, 99 S.W.3d 277, 282–83 (Tex. App.—Texarkana 2003, pet. dism'd, untimely filed).   A grant of a motion for

---

[6]During voir dire, Padilla testified the amount of hydrocodone was "below our administrative cut off level."   Padilla was not asked to explain the justification for the administrative cutoff—e.g., whether the cutoff level was designed to prevent contamination from prior tests, was due to the detection levels of the instrument, or was justified by another reason.

[7]The trial court also stated, "[S]ince the hydrocodone is below the administrative level, there's really no need to go into it."

10

mistrial should be reserved for those rare cases in which neither an objection or an instruction to disregard could have prevented or cured the error. *Young*, 137 S.W.3d at 69. This Court has noted that an error in admitting improper testimony

> may be generally cured or rendered harmless by a withdrawal of such testimony and an instruction to disregard the same except in extreme cases where it appears that the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced on their minds.

*Lollis v. State*, 232 S.W.3d 803, 810 (Tex. App.—Texarkana 2007, pet. ref'd) (challenge to admissibility of testimony).

Assuming, without deciding, that Padilla's testimony was inadmissible, an instruction to disregard would have been sufficient to cure the error. Except in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and where the conduct is of such a character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds, a prompt instruction to disregard will ordinarily cure any error. *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Livingston v. State*, 739 S.W.2d 311 (Tex. Crim. App. 1987). The testimony in this case is not sufficiently inflammatory that an instruction to disregard would have prevented a fair trial. Because a prompt instruction to disregard would have cured any error, the trial court did not err in denying Massey's motion for mistrial.

**The Trial Court Did Not Abuse Its Discretion in Denying the Motion for New Trial**

In her remaining issue, Massey argues the trial court abused its discretion in denying her motion for new trial. Massey filed a motion for new trial alleging newly discovered evidence alleging that Dr. Alexander Orlov, Massey's treating physician, could have "presented an opinion that she was driving in accordance with his treatment and the Defendant would not have been impaired at the levels recorded in the blood test."[8] The trial court held a hearing on the motion for new trial. Over the State's objection, Massey introduced business records[9] consisting of a brief medical history and prescriptions. The trial court denied Massey's motion for new trial.

If material evidence favorable to the accused has been discovered since trial, a new trial shall be granted to an accused. TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006). We review the denial of a motion for new trial for an abuse of that discretion. *Lewis v. State*, 126 S.W.3d 572, 579 (Tex. App.—Texarkana 2004, pet. ref'd). A trial court does not abuse its discretion in denying a motion for new trial unless the record demonstrates that (1) the newly discovered evidence was unknown at the time of the trial; (2) the failure to discover the new evidence was not due to a lack of diligence; (3) the new evidence is admissible and not merely

---

[8]In the affidavit attached to the motion for new trial, Dr. Orlov certified the statements were "true and correct," but did not swear to the affidavit before an official authorized to administer oaths. *See* TEX. GOV'T CODE ANN. § 602.002 (West Supp. 2010). Dr. Orlov's affidavit provided he "was not available to testify for Lisa Massey previously as a result of unrelated legal matters related to my doctor's office." We note the State argues Massey's affidavit in support of her motion for new trial was not sworn and, therefore, insufficient. Because the trial court held a hearing on the motion for new trial, it is not necessary for us to express an opinion concerning whether the affidavits were sufficient to require the trial court to hold a hearing. Massey did not tender the affidavit for admission into evidence during the hearing.

[9]Scott Landers, medical assistant to Dr. Orlov, testified concerning the business records and stated Dr. Orlov, who was under subpoena, was unavailable due to "some other type of legal matte[r]."

12

cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial. *Id.*; *see Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Keeter v. State*, 74 S.W.3d 31, 36 (Tex. Crim. App. 2002); *Moore v. State*, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994). Massey failed to meet these requirements.

"An accused may not secure a new trial by failing to call a witness whose identity is known, and whose knowledge of the case might have been known prior to trial in the exercise of reasonable diligence." *Fuqua v. State*, 457 S.W.2d 571, 572 (Tex. Crim. App. 1970). Massey failed to establish the evidence was unknown at the time of trial or the failure to discover the evidence was not due to a lack of diligence. Even if Dr. Orlov was unavailable to testify personally, Massey could have called another medical doctor to provide substantially equivalent testimony. The alleged "newly discovered" evidence could have been presented at trial with the exercise of reasonable diligence. In addition, Massey failed to prove the evidence would probably bring about a different result. Massey testified at trial that she was taking her medications as prescribed and the medications did not affect her ability to drive. The trial court did not abuse its discretion in denying Massey's motion for new trial.

**Conclusion**

The evidence is sufficient to support the jury's conclusion. A rational juror could have concluded Massey was guilty beyond a reasonable doubt. Massey failed to show reversible error

occurred when the trial court overruled her objection to Padilla's qualifications to provide expert testimony on the effect of carisoprodol. Even if the trial court erred, substantially the same evidence had previously been introduced. Because an instruction to disregard would have cured any error in permitting Padilla to testify a small amount of hydrocodone was detected, the trial court did not err in denying Massey's motion for mistrial. Finally, the trial court did not abuse its discretion in denying Massey's motion for a new trial because the alleged newly discovered evidence could have been presented at trial with the exercise of reasonable diligence.

For the reasons stated, we affirm.


Bailey C. Moseley
Justice

Date Submitted:     May 27, 2011
Date Decided:       June 14, 2011

Do Not Publish